## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

HARTFORD FIRE INSURANCE COMPANY,

                    Plaintiff(s),

          v.

RENATO FICHMANN; ROSE CONTAINERLINE,
INC.; MARGARET HORTON-BRESHEARS; ERSIN
OZERDEN; CAROL BOLLAND; JAMES and LAURA
GRESHAM; FRANCYNE PEREIRA;
McKENZIE; DESEN LU; WILLIAM and SUSAN
BELL; DAVID MACDONALD; RUBY ACOSTA; MIKE
WOHLEGMUTH; CRANNY COLLEEN; APHRODITE
BERBERIDIS; TRUDIE and PETER
SCHREINERWOOD; AMER ABU-HANN; TROMPIZ;
JOE EDWARDS; PALLADINO; LINES; KRISTINE
BOUDREAU; CHUVAL BONICELLE,
CARSON, EL AL MOVING CORP., dba GLOBAL
EXPRESS; and BELLA GRUSHKO,

                    Defendant(s).

CIVIL ACTION NO.
08-cv-01321 (NRB)


**DEFENDANT ROSE
CONTAINER LINE'S
ANSWER AND CROSS-
CLAIM**

          PLEASE TAKE NOTICE, that ROSE CONTAINER LINE for its Answer, affirmative

defenses and cross claims to the Complaint, hereby admits, denies, and alleges as follows:

### JURISDICTION AND VENUE

1.    As to Paragraph 1 of the Complaint, Defendant Rose Container Line ("Rose") admits the

      allegations.

2.    As to Paragraph 2 of the Complaint, Defendant Rose admits the allegations.

3.    As to Paragraph 3 of the Complaint, Defendant Rose admits the allegations.

4.    As to Paragraph 4 of the Complaint, Defendant Rose admits the allegations.

5.    As to Paragraph 5 of the Complaint, Defendant Rose admits the allegations.

6. As to Paragraph 6 of the Complaint, Defendant Rose admits it asserted a claim against the Bond, but lacks sufficient information to admit or deny the remaining allegations, and therefore denies the same.

7. As to Paragraph 7 of the Complaint, Defendant Rose admits the allegations.

8. As to Paragraph 8 of the Complaint, Defendant Rose admits the allegations.

9. As to Paragraph 9 of the Complaint, Defendant Rose admits the allegations.

10. As to Paragraph 10 of the Complaint, Defendant Rose admits the allegations.

## COUNT I
## STATUTORY INTERPLEADER
## (AS TO CLAIMANTS)

11. As to Paragraph 11 of the Complaint, Defendant Rose admits the allegations.

12. As to Paragraph 12 of the Complaint, Defendant Rose admits the allegations.

13. As to Paragraph 13 of the Complaint, Defendant Rose admits the allegations.

14. As to Paragraph 14 of the Complaint, Defendant Rose admits the allegations.

15. As to Paragraph 15 of the Complaint, Defendant Rose admits the allegations.

16. As to Paragraph 16 of the Complaint, Defendant Rose admits the allegations.

17. As to Paragraph 17 of the Complaint, Defendant Rose admits it asserted a claim against Hartford under the Bond but lacks information sufficient to admit or deny the remainder of the allegations, but if an answer were required, it would be to admit the allegations.

18. As to Paragraph 18 of the Complaint, Defendant Rose admits the allegations.

19. As to Paragraph 19 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to deny the allegations.

20. As to Paragraph 20 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to deny the allegations.

## COUNT II
## CONTRACTUAL INDEMNIFICATION
## (AS TO EAMC and BELLA GRUSHKO)

21. As to Paragraph 21 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

22. As to Paragraph 22 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

23. As to Paragraph 23 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

24. As to Paragraph 24 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

25. As to Paragraph 25 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

26. As to Paragraph 26 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

27. As to Paragraph 27 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

28. As to Paragraph 28 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

29. As to Paragraph 29 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

30. As to Paragraph 30 of the Complaint, Defendant Rose admits it asserted a claim against Hartford under the Bond but lacks information sufficient to admit or deny the remainder of the allegations, but if an answer were required, it would be to deny the allegations.

31. As to Paragraph 31 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to deny the allegations.

## COUNT III
## DEMAND FOR COLLATERAL
## (AS TO EAMC and BELLA GRUSHKO)

32. As to Paragraph 32 of the Complaint, Defendant repeats and reaffirms its answers set forth in Paragraphs 1 through 31 of Counts I and II as though fully set forth herein.

33. As to Paragraph 33 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

34. As to Paragraph 34 of the Complaint, Defendant Rose admits it asserted a claim against Hartford under the Bond but lacks information sufficient to admit or deny the remainder of the allegations, but if an answer were required, it would be to deny the allegations.

## COUNT IV
## SUBROGATION
## (AS TO EAMC)

35. As to Paragraph 35 of the Complaint, Defendant repeats and reaffirms its answers set forth in Paragraphs 1 through 34 of Counts I, II and III as though fully set forth herein.

36. As to Paragraph 36 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

## COUNT V
## COMMON LAW INDEMNIFICATION
## (AS TO EAMC)

37. As to Paragraph 37 of the Complaint, Defendant repeats and reaffirms its answers set forth in Paragraphs 1 through 36 of Counts I, II, III and IV as though fully set forth herein.

38. As to Paragraph 38 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

39. As to Paragraph 39 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

40. As to Paragraph 40 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

**COUNT VI**
**EXONERATION/QUI TIMET**
**(AS TO EAMC)**

41. As to Paragraph 41 of the Complaint, Defendant repeats and reaffirms its answers set forth in Paragraphs 1 through 40 of Counts I through V as though fully set forth herein.

42. As to Paragraph 42 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

43. As to Paragraph 43 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to deny the allegations.

44. As to Paragraph 44 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

45. As to Paragraph 45 of the Complaint, Defendant Rose lacks information sufficient to admit or deny the allegations, but if an answer were required, it would be to admit the allegations.

**AFFIRMATIVE DEFENSES**

46. Defendant Rose presently has insufficient knowledge or information on which to form a belief as to whether it may have, as yet unstated, defenses available.  Defendant Rose reserves the right to assert additional defenses that are revealed by further investigation or by discovery.

## AS AND FOR A FIRST CROSS-CLAIM
## AGAINST EL AL MOVING CORP. dba GLOBAL EXPRESS

47. Defendant Rose is a non-vessel operating common carrier, duly licensed by the Federal Maritime Commission and organized and existing pursuant to the laws of the United States with offices and a place of business located at 259 W. 30th Street, 12th floor, New York, NY 10001.

48. At all times relevant herein, Defendant Rose entered into various contracts of carriage evidenced by bills of lading with Defendant El Al Moving Corp. ("EAMC"), either directly or through its agent, Global Express, for the carriage, storage, handling, care and/or maintenance of Defendant EAMC's cargoes by Defendant Rose in consideration for payments by Defendant EAMC said services.

49. Annexed hereto as Exhibit A are the bills of lading for the 3 unpaid shipments at issue. Information that is confidential to the consignee and/or notify party and is not relevant to Rose's liability has been redacted, but is available to the court for *in camera* inspection relative to issues of confidentiality.

50. The contracts of carriage were governed by agreed upon terms and conditions.  A true copy of the terms and conditions governing the 3 bills of lading is annexed hereto as Exhibit B.

51. Paragraph 19 of the terms and conditions provide for the exclusive jurisdiction of the United States District Court for the Southern District of New York to hear all disputes.

52. Jurisdiction is also pursuant to 28 U.S.C. §1335 and *quasi in rem* jurisdiction because the *res*, namely $85,000.00, has been deposited into the custody of the United States District

Court for the Southern District of New York pursuant to Judge Buckwald's Order dated February 21, 2008.

53. Venue is properly laid in this district pursuant to 28 U.S.C. §1397 as at least one defendant, Rose, resides in this district.

54. Defendant Rose duly performed all duties and obligations required to be performed by Defendant EAMC in connection with Defendant EAMC's goods having duly delivered them pursuant to the contracts of carriage.

55. Defendant Rose has placed Defendant EAMC on notice of its claim that Defendant EAMC has breached the bills of lading and violated Defendant Rose's rights under the law.

56. Despite Defendant Rose's repeated demands, Defendant EAMC wrongfully, willfully, negligently and/or fraudulently breached the terms of the bills of lading and at law, by *inter alia*, failing to pay freight, dead freight, demurrage, detention, port fees, tariffs and/or other associated costs.

57. By reason of the foregoing, Defendant Rose has sustained damages in the amount of $11,905.00 together with interest, costs, fees, and expenses.

**AS AND FOR A SECOND CROSS-CLAIM**
**AGAINST EAMC**

58. Defendant Rose repeats and reiterates each and every allegation contained in paragraphs 47 to 57 of this Answer as if specifically set forth herein at length.

59. Defendant EAMC has a stated account with Defendant Rose for which a statement of account has been served to collect payment from EAMC.  A true copy of the statement of account is annexed hereto as Exhibit C.

60. Defendant EAMC made a partial payment leaving a balance of $11,905.00.

61. Defendant EAMC has not refuted the statement of account nor paid the balance due.

62. By reason of the foregoing, Defendant Rose has sustained damages in the amount of $11,905.00.

### AS AND FOR A THIRD CROSS-CLAIM
### AGAINST EAMC

63. Defendant Rose repeats and reiterates each and every allegation contained in paragraphs 47 to 62 of this Answer as if specifically set forth herein at length.

64. Defendant Rose is due from Defendant EAMC the quantum meruit of Defendant Rose's services.

### AS AND FOR A FOURTH CROSS-CLAIM
### AGAINST EAMC

65. Defendant Rose repeats and reiterates each and every allegation contained in paragraphs 47 to 64 of this Answer as if specifically set forth herein at length.

66. Paragraph 16.2 of the terms and conditions provides that "interest at 1% per month shall run from the date that freight and charges are due."

67. Annexed hereto as Exhibit D are the invoices stating the charges which range from 6/21/07 to 7/16/07. Based on the 7/16/07 date, 9 months have passed since the invoice for the last shipment was due. Therefore, 1% of $11,905.00 is $119.05 per month, and this figure over 9 months totals $1,071.45 in interest.

68. Defendant Rose is due from Defendant EAMC interest payments totaling $1,071.45.

69. Defendant Rose reserves it right to assert additional claims for interest payments that accrue throughout the course of the litigation.

## AS AND FOR A FIFTH CROSS-CLAIM
## AGAINST EAMC

70. Defendant Rose repeats and reiterates each and every allegation contained in paragraphs 47 to 69 of this Answer as if specifically set forth herein at length.

71. Paragraph 16.4 of the terms and conditions provides for the recovery of collection and litigation expenses for the payment of all freight and charges under the contracts of carriage, including reasonable attorneys' fees.

72. To date, attorneys' fees total $2,7500.00 which represents 10 hours of work, at a rate of $275.00 per hour, which is a reasonable rate for attorneys in the maritime trade area.

73. Defendant Rose reserves it right to assert additional claims for the recovery of collection fees and litigation expenses, including attorneys fees, that accrue throughout the course of the litigation.

74. By reason of the foregoing, Defendant Rose has sustained damages and fees to date in the amount of $15,726.45.


WHEREFORE, Defendant Rose respectfully requests that

(a) Judgment be entered against Defendant EAMC for an amount exceeding **fifteen thousand seven hundred twenty-six dollars and forty five cents $15,726.45**, plus additional interest, collections fees, including attorneys fees, costs and disbursements that are incurred throughout the course of this litigation;

(b) That pursuant to this judgment, Defendant Rose shall be compensated forthwith from the $85,000.00 sum deposited with this court;

(c) That Court process be issued against Defendant EAMC; and,

(d) That Defendant Rose be granted such other and further relief as the Court may deem just

and proper.

Dated: New York, New York
        April 10, 2008

Shayne Law Group. P.C.
Attorney for Defendant, Rose Container Line
64 Fulton Street, Ste. 1000
New York, NY  10038
(212) 566-4949 (telephone)
(212) 202-5423 (telecopier)

By:  ___/s/  William Shayne_____
        William C. Shayne (WS 5672)

EXHIBIT A

# *ROSE CONTAINERLINE, INC.*

# BILL OF LADING

| SHIPPER/EXPORTER | BOOKING NO. | BILL OF LADING NO. |
|---|---|---|
| EL AL SHIPPING<br>200 KNUTH ROAD<br>SUITE 214<br>BOYNTON BEACH, FL 33436 | ORF183256 | 39900-01 |

**EXPORT REFERENCES**
REF 1068718

| CONSIGNEE | FORWARDING AGENT, F.M.C. NO. |
|---|---|
| | GLOBAL EXPRESS<br>200 KNUTH ROAD SUITE 214<br>BOYNTON BEACH FL 33436 |

**POINT AND COUNTRY OF ORIGIN OF GOODS**
USA

**NOTIFY PARTY**
JOHN SOLOMON/TARA MONIQUE SOLOMON
#2 UTSHANI-CLOSE-B1 GRAND FLORIDIAN-
UMHLANGA ROCKS DRIVE, LALUCIA- DURBAN
SOUTH AFRICA 4051  T:01127315621672
JS@INTERACTIVEINVESTMENTGROUP.COM

**FOR DELIVERY PLEASE APPLY TO**
DEVOTED CONTAINER LINE PTY LTD
18TH FLOOR JOHN ROSS HOUSE
22/36 VICTORIA EMBANKMETN  DEVOTED@
DURBAN 4001 SOUTH AFRICA   IAFRICA.COM
011-2731-368 2495 FX 2731-368-2310

| PRE-CARRIAGE BY | PLACE OF RECEIPT BY PRE-CARRIER | ROUTING AND INSTRUCTIONS |
|---|---|---|
| | ROSWELL, GA 30075 | |
| EXPORT CARRIER (VESSEL/VOY/FLAG) | PORT OF LOADING | LOADING PIER/TERMINAL |
| ZIM VIRGINIA V18E | SAVANNAH GA. | OTI NO: 13031N |
| PLACE OF DELIVERY BY ON-CARRIER | | TYPE OF MOVE |
| HAIFA, ISRAEL | DURBAN | |

## PARTICULARS FURNISHED BY SHIPPER

| MRKS & NOS/CONTAINER NOS | NO. OF PKGS. | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| CONTAINER #<br>MLCU3508540<br>SEAL #C0936235 | 1 | X20FT STD CONTAINER SLAC:<br>114 PCS HHG AND P/E<br>FREIGHT PREPAID<br>EXPRESS RELEASE<br>NO SED REQUIRED VALUE UNDER 2,500<br>SHIPPER'S LOAD, STOW AND COUNT | 6000LB<br>2722KG | CF<br>.000CM |

NOTICE:   Clause 7 on the reverse side hereof limits Carrier's ~~CONTAINER SLAC~~ liability to the described freight unit by virtue of incorporation of the U.S. Carriage of Goods
by Sea Act, 1936, unless Merchant declares a higher cargo value below and pays Carrier's ad valorem freight charge. Declared Cargo Value US
$ _____ . If Merchant enters a value, Carrier's limitation of liability shall not apply and the ad valorem rate will be charged.

**These commodities, technology, or software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.**

| FREIGHT & CHARGES | BASIS | RATE | PREPAID | COLLECT |
|---|---|---|---|---|
| | | | | |
| | | | TOTAL | TOTAL |

Received the described goods or packages or containers said to contain goods, in apparent good order and condition, unless otherwise indicated, to be transported and delivered as herein provided.
The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and to the Carrier's applicable tariff.
One of the Bills of Lading must be surrendered duly endorsed in exchange for the goods or delivery order.
In WITNESS whereof 3 of original Bills of Lading all of this tenor and date have been signed in the number stated above, one of which being accomplished the other(s) to be void.

DATED NEW YORK  ON JUN 18, 2007
BY ROSE AGENCY INC AS AGENTS

BY _____

**ROSE CONTAINERLINE, INC. AS CARRIER**

(3938)

# ROSE CONTAINERLINE, INC.

# BILL OF LADING

| | |
|---|---|
| BOOKING NO. NYC75230042 | BILL OF LADING NO. 39823-01 |

SHIPPER/EXPORTER
EL AL SHIPPING
200 KNUTH ROAD
SUITE 214
BOYNTON BEACH, FL 33436

EXPORT REFERENCES
REF 106675

CONSIGNEE

FORWARDING AGENT, F.M.C. NO.
GLOBAL EXPRESS
200 KNUTH ROAD SUITE 214
BOYNTON BEACH FL 33436

POINT AND COUNTRY OF ORIGIN OF GOODS
USA

NOTIFY PARTY

FOR DELIVERY PLEASE APPLY TO
TRAVIMA FORWARDING S.L.
GRAN VIA CORTS CATALANES NO. 184
08038 BARCELONA, SPAIN
EMAIL: ASANJUAN@TRAVIMAFWD.COM
TEL:3493-228-9440 FX 3493-228 9996/97

| PRE-CARRIAGE BY | PLACE OF RECEIPT BY PRE-CARRIER HAYWARD, CA 94545 | ROUTING AND INSTRUCTIONS |
|---|---|---|
| EXPORT CARRIER (VESSEL/VOY/FLAG) AL MANAKH 0217E | PORT OF LOADING NORFOLK, VA | LOADING PIER/TERMINAL OTI NO: 13031N |
| PORT OF DISCHARGE VALENCIA | PLACE OF DELIVERY BY ON CARRIER SANTA CRUZ TENERIFE | TYPE OF MOVE |

## PARTICULARS FURNISHED BY SHIPPER

| MRKS & NOS/CONTAINER NOS | NO. OF PKGS. | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| CONTAINER # HJCU1254907 SEAL #0068386 BKG # NYC75230042 | 1 | X40FT HC CONTAINER SLAC: 232 PCS HHG/P/E AND 2004 HONDA UT VIN #2HKYF18574H602720 FREIGHT PREPAID EXPRESS RELEASE AES XTN:203005108-1066675 AES ITN:X20070612011165 SHIPPER'S LOAD, STOW AND COUNT | 12000LB 5443KG | CF .000CM |

CONTAINER #HJCU1254907

NOTICE:    Clause 7 on the reverse side hereof limits Carrier's liability for the package or customary freight unit by virtue of incorporation of the U.S. Carriage of Goods by Sea Act, 1936, unless Merchant declares a higher cargo value below and pays Carrier's ad valorem freight charge. Declared Cargo Value US
$                                , if Merchant enters a value, Carrier's limitation of liability shall not apply and the ad valorem rate will be charged.

These commodities, technology, or software were exported from the United States in accordance with the Export Administration Regulations.
Diversion contrary to U.S. law prohibited.

| FREIGHT & CHARGES | BASIS | RATE | PREPAID | COLLECT |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL | TOTAL |

Received the described goods or packages or containers said to contain goods, in apparent good order and condition, unless otherwise indicated, to be transported and delivered as herein provided.
The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and to the Carrier's applicable tariff.
One of the Bills of Lading must be surrendered duly endorsed in exchange for the goods or delivery order.
In WITNESS whereof 3 of original Bills of Lading all of this tenor and date have been signed in the number stated above, one of which being accomplished the other(s) to be void.

(3938)

DATED NEW YORK        on JUN 22, 2007
BY  ROSE AGENCY INC AS AGENTS

BY

ROSE CONTAINERLINE, INC. AS CARRIER

# ROSE CONTAINERLINE, INC.

# BILL OF LADING

| | |
|---|---|
| **SHIPPER/EXPORTER**<br>EL AL SHIPPING<br>200 KNUTH ROAD<br>SUITE 214<br>BOYNTON BEACH, FL 33436 | **BOOKING NO.** ORF186877  **BILL OF LADING NO.** 40168-01<br>**EXPORT REFERENCES**<br>REF 1065211 |

| | |
|---|---|
| **CONSIGNEE** | **FORWARDING AGENT, F.M.C. NO.**<br>GLOBAL EXPRESS<br>200 KNUTH ROAD SUITE 214<br>BOYNTON BEACH FL 33436<br>**POINT AND COUNTRY OF ORIGIN OF GOODS**<br>USA |

| | |
|---|---|
| **NOTIFY PARTY**<br>AVIOMAR S.A.<br>AVIENDA EL DORADO NO.96-47<br>TEL:571 4255555 EXT.152 FAX:5714152261<br>E-MAIL ZENAIDA_MUNOZ@AVIOMAR.COM.CO<br>BOGATA, COLOMBIA | **POINT FOR DELIVERY PLEASE APPLY TO**<br>TRANSIMEX LTDA<br>CARR 45 #53-44<br>OFC 401<br>JGIRALDO@TRANSIMEX.COM.CO<br>MEDELLIN, COLOMBIA |

| **PRE-CARRIAGE BY** | **PLACE OF RECEIPT BY PRE-CARRIER**<br>NASHVILLE,TN37205 | **ROUTING AND INSTRUCTIONS** |
|---|---|---|
| **EXPORT CARRIER (VESSEL/VOY/FLAG)**<br>ZIM PANAMA V20W | **PORT OF LOADING**<br>SAVANNAH GA. | **LOADING PIER/TERMINAL**<br>OTI NO: 13031N |
| **PORT OF DISCHARGE**<br>CARTAGENA | **PLACE OF DELIVERY BY ON CARRIER**<br>CARTAGENA | **TYPE OF MOVE** |

### PARTICULARS FURNISHED BY SHIPPER

| MRKS & NOS/CONTAINER NOS | NO. OF PKGS. | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| CONTAINER #<br>GLDU0673337<br>SEAL #925382<br><br>BKG ORF186874 | 1 | X40FT HC CONTAINER SLAC:<br>225 PCS HHG AND P/E<br>FREIGHT PREPAID<br>RELEASE ORIGINAL OBL'S AT<br>DESTINATION<br>NO SED REQUIRED VALUE UNDER 2,500<br><br>SHIPPER'S LOAD, STOW AND COUNT | 12000LB<br>5443KG | CF<br>.000CM |

NOTICE:   Clause 7 on the reverse side hereof limits Carrier's liability per package or ordinary freight unit by virtue of incorporation of the U.S. Carriage of Goods by Sea Act, 1936, unless Merchant declares a higher cargo value below and pays Carrier's ad valorem freight charge. Declared Cargo Value US _____ . If Merchant enters a value, Carrier's limitation of liability shall not apply and the ad valorem rate will be charged.

**These commodities, technology, or software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.**

| FREIGHT & CHARGES | BASIS | RATE | PREPAID | COLLECT |
|---|---|---|---|---|
| | | | | |
| | | | TOTAL | TOTAL |

Received the described goods or packages or containers said to contain goods, in apparent good order and condition, unless otherwise indicated, to be transported and delivered as herein provided.
The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and to the Carrier's applicable tariff.
One of the Bills of Lading must be surrendered duly endorsed in exchange for the goods or delivery order.
In WITNESS whereof 3 of original Bills of Lading all of this tenor and date have been signed in the number stated above, one of which being accomplished the other(s) to be void.

DATED NEW YORK    ON JUL 08, 2007
BY ROSE AGENCY INC AS AGENTS

**ROSE CONTAINERLINE, INC. AS CARRIER**

(9938)

EXHIBIT B

Notwithstanding the heading "Combined Transport Bill of Lading," the provisions set out and referred to in this document shall also apply if the transport as described on the face of this Bill of Lading is performed by one mode of transport only.

**(1) CLAUSE PARAMOUNT:**
All carriage under this Bill of Lading to or from the United States shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, 46 U.S.C. sections 1300-1315 (hereafter, "COGSA"). Carriage to or from Canada shall have effect under the Carriage of Goods by Water Act of Canada ("COGWA"). All carriage to and from other States shall be governed by the law of any state making the Hague Rules or Hague-Visby Rules compulsorily applicable to this Bill of Lading or if there be no such law, in accordance with the Hague Rules. The provisions of applicable law as set forth above shall apply to carriage of goods by inland waterways and reference to carriage by sea in such Rules or legislation shall be deemed to include reference to inland waterways. Except as may be otherwise specifically provided herein, said law shall govern before the goods are loaded on and after they are discharged from the vessel whether the goods are carried on deck or under deck and throughout the entire time the goods are in the custody of the carrier.

**(2) DEFINITIONS:**
2.1 "Ship" means the vessel named in this Bill of Lading, or any conveyance owned, chartered, or operated by Carrier or used by Carrier for the performance of this contract.
2.2 "Carrier" means Rose Containerline, Inc. dba Fabius Containerline dba Sea Sky Containerline dba Tricon Containerline on whose behalf this Bill of Lading has been signed.
2.3 "Merchant" includes the Shipper, the Receiver, the Consignor, the Consignee, the Holder of this Bill of Lading and any person having a present or future interest in the Goods or any person acting on behalf of any of the above-mentioned persons.
2.4 "Package" is the largest individual unit of partially or completely covered or contained cargo made up by or for the Shipper which is delivered and entrusted to Carrier, including palletized units and each container stuffed and sealed by the Shipper or on its behalf, although the Shipper may have furnished a description of the contents of such sealed container on this bill of lading.
2.5 "Container" includes any container, trailer, transportable tank, lift van, flat, pallet, or any similar article of transport used to consolidate goods.
2.6 "Carrier's container or carrier's equipment" includes containers or equipment owned, leased or used by Carrier in the transportation of Merchant's goods.
2.7 "Goods" mean the cargo described on the face of this Bill of Lading and, if the cargo is packed into container(s) supplied or furnished by or on behalf of the Merchant, include the container(s) as well.

**(3) SUBCONTRACTING:**
3.1 Carrier shall be entitled to subcontract directly or indirectly on any terms the whole or any part of the handling, storage, or carriage of the goods and all duties undertaken by Carrier in relation to the goods.
3.2 Every servant or agent or subcontractor (including sub-contractors) of Carrier shall be entitled to the same rights, exemptions from liability, defenses and immunities to which Carrier is entitled. For these purposes, Carrier shall be deemed to be acting as agent or trustee for such servants or agents or subcontractors, who shall be deemed to be parties to the contract evidenced in this Bill of Lading.

**(4) ROUTE OF TRANSPORT:**
4.1 Carrier is entitled to perform the transport in any reasonable manner and by any reasonable means, methods and routes.
4.2 The Ship shall have the liberty, either with or without the goods on board, to at any time, adjust navigational instruments, make trial trips, dry dock, go to repair yards, shift berths, take in fuel or stores, embark or disembark any persons, carry contraband and hazardous goods, sail with or without pilots and save or attempt to save life or property. Delays resulting from such activities shall not be deemed a deviation.

**(5) HINDRANCES AFFECTING PERFORMANCE:**
5.1 Carrier shall use reasonable endeavors to complete transport and to deliver the goods at the place designated for delivery.
5.2 If at any time the performance of this contract as evidenced by this Bill of Lading is or will be affected by any hindrance, risk, delay, injury, difficulty or disadvantage of any kind including strike and if by virtue of the above is has rendered or is likely to render it in any way unsafe, impracticable, unlawful, or against the interest of Carrier to complete the performance of the contract, Carrier, whether or not the transport is commenced, may without notice to Merchant elect to:
    (a) treat the performance of this contract as terminated and place the goods at Merchant's disposal at any place Carrier shall deem safe and convenient; or
    (b) deliver the goods at the place of delivery.
In any event, Carrier shall be entitled to full freight for any goods received for transportation and additional compensation for extra costs resulting from the circumstances referred to above.
5.3 If, after storage, discharge, or any actions according to sub-part 5.2 above Carrier makes arrangements to store and/or forward the goods, it is agreed that he shall do so only as agent for and at the sole risk and expense of Merchant without any liability whatsoever in respect of such agency. Merchant shall reimburse Carrier forthwith upon demand for all extra freight charges and expenses incurred for any actions taken according to sub-part 5.2, including delay or expense to the Ship, and Carrier shall have a lien upon the goods to that extent.
5.4 Carrier, in addition to all other liberties provided for in this Article, shall have liberty to comply with orders, directions, regulations or suggestions as to navigation or the carriage or handling of the goods or the ship howsoever given by any actual or purported government or public authority, or by any committee or person having under the terms of any insurance on the Ship, the right to give such order, direction, regulation, or suggestion. If by reason of and/or in compliance with any such order, direction, regulation, or suggestions, anything is done or is not done the same shall be deemed to be included within the contractual carriage and shall not be a deviation.

**(6) BASIC LIABILITY:**
6.1 Carrier shall be liable for loss of or damage to the goods occurring between the time when it takes goods into its custody and the time of delivery but shall not be liable for any consequential damages arising from such loss or damage.
6.2 If it is established that the loss of or damage to the goods occurred during sea carriage, liability shall be governed by the legal rules applicable as provided in Section 1 of this Bill of Lading.
6.3 Notwithstanding Section 1 of this Bill of Lading, if it is established that the loss or damage to the goods occurred during carriage by land in the United States, liability shall be governed by the provisions of Section 7.4 of this Bill of Lading.
6.4 Notwithstanding Section 1 of this Bill of Lading, if the loss or damage occurred outside of the United States not during sea carriage and it can be proved where the loss or damage occurred, the liability of Carrier in respect of such loss or damage shall be determined by the provisions contained in any international convention or national law, which provisions:
    (a) cannot be departed from by private contract to the detriment of Merchant, and
    (b) would have applied if Merchant had made a separate and direct contract with Carrier in respect of the particular stage of transport where the loss or damage occurred and received as evidence thereof any particular document which must be issued in order to make such international convention or national law applicable.
    (c) where (a) or (b) above do not apply, any liability of Carrier shall be limited to the amount set forth in Section 7.4 of this Bill of Lading.
6.5 If it cannot be determined when the loss of or damage to the goods occurred, it shall be presumed that such loss or damage occurred during sea carriage and liability shall be governed as provided in Section 6.2 above.
6.6 Carrier does not undertake that the goods shall be delivered at any particular time and shall not be liable for any direct or indirect losses caused by any delay.
6.7 Carrier shall not be liable for any loss or damage arising from:
    (a) an act or omission of Merchant or person other than Carrier acting on behalf of Merchant from whom Carrier took the goods in charge;
    (b) compliance with the instructions of any person authorized to give them;
    (c) handling, loading, stowage or unloading of the goods by or on behalf of Merchant;
    (d) inherent vice of the goods;
    (e) lack or insufficiency of or defective condition of packing in the case of goods, which by their nature are liable to wastage or damage when not packed or when not properly packed.
    (f) insufficiency or inadequacy of marks or numbers on the goods, coverings or unit loads;
    (g) fire, unless caused by actual fault or privity of Carrier,
    (h) any cause or event which Carrier could not avoid and the consequences of which he could not prevent by the exercise of due diligence.
6.8 When any claims are paid to Merchant by Carrier, Carrier shall automatically be subrogated to all rights of Merchant against all others, including Inland Carriers, on account of the losses or damages for which such claims are paid.
6.9 The defenses and limits of liability provided for in this Bill of Lading shall apply in any action against Carrier for loss or damage whether the action be founded in contract, tort or otherwise.

**(7) COMPENSATION FOR LOSS AND DAMAGE:**
7.1 Unless otherwise mandated by compulsorily applicable law, Carrier's liability for compensation for loss of or damage to goods shall in no case exceed the amount of US$500 per package or per customary freight unit, unless Merchant, with the consent of Carrier, has declared a higher value for the goods in the space provided on the front of this Bill of Lading and paid extra freight per Carrier's tariff, in which case such higher value shall be the limit of Carrier's liability. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value. Where a container is stuffed by Shipper or on its behalf, and the container is sealed when received by Carrier for shipment, Carrier's liability will be limited to US$500 with respect to the contents of each such container, except when the Shipper declares the value on the face hereof and pays additional charges on such declared value as stated in Carrier's tariff. The freight charged on sealed containers when no higher valuation is declared by the Shipper is based on a value of US$500 per container. However, Carrier shall not, in any case, be liable for an amount greater than the actual loss to the person entitled to make the claim.
7.2 In any case where Carrier's liability for compensation may exceed the amounts set forth in Section 7.1 above, compensation shall be calculated by reference to the value of the goods, according to their current market price, at the time and place they are delivered, or should have been delivered, in accordance with this contract. Carrier shall have the option of replacing lost goods or repairing damaged goods.
7.3 If the value of the goods is less than US$500 per package or per customary freight unit, their value for compensation purposes shall be deemed to be the invoice value, plus freight and insurance, if paid.
7.4 On shipments involving carriage by land in the United States, and for liabilities determined pursuant to Section 6.4(c) of this Bill of Lading, loss of or damage to goods shall be limited to US$.50 per pound of goods lost or damaged, unless a higher value is declared by Shipper and a supplementary charge paid.
7.5 Carrier shall not be liable in any tier extent for any loss of or damage to or in connection with precious metals, stones, or chemicals, jewelry, currency, negotiable instruments, securities, writings, documents, works of art, curios, heirlooms, or any other valuable goods, including goods having particular value only for Merchant, unless the true nature and value of the goods have been declared in writing by Merchant before receipt of the goods by the Carrier or Inland Carrier, the same is inserted on the face of this Bill of Lading and additional freight has been paid as required.
7.6 Carrier will not arrange for insurance on the goods except upon express instructions from the Consignor and then only at Consignor's expense and presentation of a declaration of value for insurance purposes prior to shipment.

**(8) DESCRIPTION OF GOODS:**
Merchant warrants to Carrier that all particulars of the goods, including, without limitation, the marks, number, quantity and weight, furnished by Merchant are correct and Merchant shall indemnify Carrier against all losses arising from any inaccuracy.

**(9) CARRIER'S CONTAINERS:**
9.1 If goods are not received by Carrier already in containers, Carrier may pack them in any type container.
9.2 Merchant shall be liable to Carrier for damage to Carrier's containers or equipment if such damage occurs while such equipment is in control of Merchant or his agents.
9.3 Merchant indemnifies Carrier for any damage or injury to persons or property caused by Carrier's containers or equipment during handling by or when in possession or control of Merchant.

**(10) CONTAINER PACKED BY MERCHANT:**
10.1 If Carrier receives the goods already packed into containers:
    1. This Bill of Lading is prima facie evidence of the receipt of the particular number of containers set forth, and that number only. Carrier accepts no responsibility with respect to the order and condition of the contents of the containers:

2. Merchant warrants that the stowage and seals of the containers are safe and proper and suitable for handling and carriage and indemnifies Carrier for any injury, loss or damage caused by breach of this warranty:
    3. Delivery shall be deemed as full and complete performance when the containers are delivered by Carrier with the seals intact; and
    4. Carrier has the right but not the obligation to open and inspect the containers at any time without notice to Merchant, and expenses resulting from such inspections shall be borne by Merchant; and
    5. Merchant shall inspect containers before stuffing them and the use of the containers shall be prima facie evidence of their being sound and suitable for use.

**(11) DANGEROUS GOODS:**
11.1 Merchant may not tender goods of a dangerous nature without written application to Carrier and Carrier's acceptance of the same. In the application, Merchant must identify the nature of the goods with reasonable specificity as well as the names and addresses of the shippers and consignees.
11.2 Merchant shall distinctly and permanently mark the nature of the goods on the outside of the package and container in a form and manner as required by law and shall submit to Carrier or to the appropriate authorities all documents required by law or by Carrier for the transportation of such goods.
11.3 If the goods subsequently, in the judgment of Carrier, become a danger to Carrier, the Ship, or other cargo, Carrier may dispose of the goods without compensation to Merchant and Merchant shall indemnify Carrier for any loss or expenses arising from such action.

**(12) DECK CARGO:**
12.1 Carrier has the right to carry the goods in any container under deck or on deck.
12.2 Carrier is not required to note "on deck stowage" on the face of this Bill of Lading and goods so carried shall constitute under deck stowage for all purposes including General Average.
12.3 Except as otherwise provided by any law applicable to this contract, if this Bill of Lading states that the cargo is stowed on deck, then Carrier shall not be liable for any non-delivery, misdelivery, delay or loss to goods carried on deck, whether or not caused by Carrier's negligence or the ship's unseaworthiness.

**(13) HEAVY LIFT:**
13.1 Single packages with a weight exceeding 2,240 pounds gross not presented to Carrier in enclosed containers must be declared in writing by Merchant before receipt of the packages by Carrier. The weight of such packages must be clearly and durably marked on the outside of the package in letters and figures not less than two inches high.
13.2 If Merchant fails to comply with the above provisions, Carrier shall not be liable for any loss of or damage to the goods, persons or property, and Merchant shall be liable for any loss or damage to persons or property resulting from such failure and Merchant shall indemnify Carrier against any loss or liability suffered or incurred by Carrier as a result of such failure.
13.3 Merchant agrees to comply with all laws or regulations that may be applicable during the carriage concerning overweight containers and Merchant shall indemnify Carrier against any loss or liability suffered or incurred by Carrier as a result of Merchant's failure to comply with this provision.

**(14) DELIVERY:**
14.1 Carrier shall have the right to deliver the goods at any time at any place designated by Carrier within the commercial or geographic limits of the port of discharge or place of delivery shown in this Bill of Lading.
14.2 Carrier's responsibility shall cease when delivery has been made to Merchant, any person authorized by Merchant to receive the goods, or in any manner or to any other person in accordance with the custom and usage of the port of discharge or place of delivery.
14.3 If goods should remain in Carrier's custody after discharge from the ship and possession is not taken by Merchant, after notice, within the time allowed in Carrier's applicable tariff, the goods may be considered to have been delivered to Merchant or abandoned at Carrier's option, and may be disposed of or stored at Merchant's expense.

**(15) NOTICE OF CLAIM:**
15.1 Written notice of claims for loss of or damage to goods occurring or presumed to have occurred while in the custody of Carrier must be given to Carrier at the port of discharge before or at the time of removal of the goods by one entitled to delivery. If such notice is not provided, removal shall be prima facie evidence of delivery by Carrier. If such loss or damage is not apparent, Carrier must be given written notice within 3 days of the delivery.

**(16) FREIGHT AND CHARGES:**
16.1 Freight may be calculated on the basis of the particulars of the goods furnished by Merchant, who shall be deemed to have guaranteed to Carrier the accuracy of the contents, weight, measure, or value as furnished by him at the time of receipt of the goods by the Carrier or Inland Carrier, but Carrier for the purpose of ascertaining the actual particulars may at any time and at the risk and expense of Merchant open the container or package and examine contents, weight, measure, and value of the goods. In case of incorrect declaration of the contents, weight, measure and or value of the goods, Merchant shall be liable for and bound to pay to Carrier:
    (a) the balance of freight between the freight charged and that which would have been due had the correct details been given, plus
    (b) expenses incurred in determining the correct details, plus
    (c) as liquidated and ascertained damages, an additional sum equal to the correct freight.
Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by Carrier to Merchant are for informational purposes only and are subject to change without notice and shall not under any circumstances be binding upon Carrier unless Carrier in writing specifically undertakes the handling of transportation of the shipment at a specific rate.
16.2 Freight shall be deemed earned on receipt of goods by Carrier, the goods lost or not lost, whether the freight be intended to be prepaid or collected at destination. Payment shall be in full and in cash without any offset, counterclaim, or deduction, in the currency named in this Bill of Lading, or another currency at Carrier's option. Interest at 1% per month shall run from the date when freight and charges are due. Payment of freight charges to a freight forwarder, broker or anyone other than directly to Carrier shall not be deemed payment to the Carrier. Merchant shall remain liable for all charges hereunder notwithstanding any extension of credit to the freight forwarder or broker by Carrier. Full freight shall be paid on damaged or unsound goods.
16.3 Merchant shall be liable for all dues, duties, fines, taxes and charges, including consular fees, levied on the goods. Merchant shall be liable for return freight and charges on the goods if they are refused export or import by any government. Merchant shall be liable for all demurrage or detention charges imposed on the goods or their containers by third parties.
16.4 The Shipper, consignee, holder hereof, and owner of the goods, and their principals, shall be jointly and severally liable to Carrier for payment of all freight and charges, including advances and shall, in any referral for collection or action for monies due to Carrier, upon recovery by Carrier, pay the expenses of collection and litigation, including reasonable attorneys' fees. This provision shall apply regardless of whether the front of this bill of lading has been marked "prepaid" or "freight prepaid" so long as freight and charges remain unpaid.
16.5 The Shipper, consignee, holder hereof, and owner of the goods, and their principals, shall jointly and severally indemnify Carrier for all claims, fines, penalties, damages, costs and other amounts which may be incurred or imposed upon Carrier by reason of any breach of any of the provisions of this Bill of Lading or of any statutory or regulatory requirements.

**(17) LIEN:**
Carrier shall have a general lien on any and all property (and documents relating thereto) of Merchant, in its possession, custody or control or en route, for all claims for charges, expenses or advances incurred by Carrier in connection with any shipments of Merchant and if such claim remains unsatisfied for 30 days after demand for its payment is made, Carrier may sell at public auction or private sale, upon 10 days written notice, registered mail to Merchant, the goods, wares and/ or merchandise or so much as may be necessary to satisfy such lien and the costs of recovery, and apply the net proceeds of such sale to the payment of the amount due Carrier. Any surplus from such sale shall be transmitted to Merchant, and Carrier shall be liable for any deficiency in the sale.

**(18) TIME BAR:**
Carrier shall be discharged from all liability for loss of or damage to goods unless suit is brought within 9 months after delivery of the goods or the date when the goods should have been delivered. Suit shall not be deemed brought against Carrier until jurisdiction shall have been obtained over Carrier by service of summons. The time bar for overcharge claims shall be 36 months.

**(19) JURISDICTION:**
In all cases where COGSA applies to this Bill of Lading, this contract is to be governed by the laws of the State of New York, with the exception of its conflicts of law principles, and the United States District Court for the Southern District of New York is to have exclusive jurisdiction to hear all disputes hereunder. In all other cases, interpretation of this Bill of Lading shall be subject to the law and jurisdiction of the place where it is issued.

**(20) GENERAL AVERAGE:**
20.1 General Average shall be adjusted at New York, or any other port at Carrier's option, according to the York-Antwerp Rules of 1994. The General Average statement shall be prepared by adjusters appointed by Carrier.
20.2 In the event of accident, damage, danger or disaster after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for the consequence of which Carrier is not responsible by statute, contract or otherwise, Merchant shall contribute with Carrier in General Average to the payment of any sacrifice, loss or expense of a General Average nature that may be made or incurred, and shall pay salvage or special charges incurred in respect of the goods. If a salving vessel is owned or operated by Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**(21) BOTH-TO-BLAME COLLISION CLAUSE:**
If the ship comes into collision with another vessel as a result of negligence of the other vessel and any negligent act or fault on the part of Carrier or its servants or subcontractors, Merchant shall indemnify Carrier against all loss or liability to the other or non-carrying vessel or her owners, insofar as such loss or liability represents loss of, or damage to or any claim whatsoever of Merchant paid or payable by the other or non-carrying vessel or her owners to Merchant and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying ship or her owner. This provision shall apply also where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault with respect to a collision or contact.

**(22) CARRIERS' TARIFFS:**
22.1 The goods carried under this Bill of Lading are also subject to all the terms and conditions of tariff(s) published pursuant to the regulations of the United States Federal Maritime Commission or any other regulatory agency which governs a particular portion of the carriage and the terms are incorporated herein as part of the terms and conditions of this Bill of Lading.
22.2 Copies of Carrier's tariffs may be obtained from Carrier or its agents or from Carrier's web-site, the address of which is set forth on the U.S. Federal Maritime Commission's web-site at www.fmc.gov.

**(23) PERISHABLE CARGO:**
23.1 Goods of a perishable nature shall be carried in ordinary containers without special protection, services or other measures unless there is noted on the reverse side of this Bill of Lading that the goods will be carried in a refrigerated, heated, electrically ventilated or otherwise specially equipped container or are to receive special attention in any way. Carrier shall not be liable for any loss of or damage to goods in a special hold or container arising from latent defects, breakdown, or stoppage of the refrigeration ventilation or heating machinery, insulation, ship's plant, or other such apparatus of the vessel or container, provided that Carrier shall before or at the beginning of the transport exercise due diligence to maintain the special hold or container in an efficient state.
23.2 Merchant undertakes not to tender for transportation any goods which require refrigeration without given written notice of their nature and the required temperature setting of the thermostatic controls before receipt of the goods by Carrier. In case of refrigerated containers packed by or on behalf of Merchant, Merchant warrants that the goods have been properly stowed in the container and that the thermostatic controls have been adequately set before receipt of the goods by Carrier.
23.3 Merchant's attention is drawn to the fact that refrigerated containers are not designed to freeze down cargo which has not been presented for stuffing at or below its designated carrying temperature. Carrier shall not be responsible for the consequences of cargo tendered at a higher temperature than that required for the transportation.
23.4 If the above requirements are not complied with, Carrier shall not be liable for any loss of or damage to the goods whatsoever.

**(24) SEVERABILITY:**
The terms of this Bill of Lading shall be severable, and, if any part or term hereof shall be held invalid, such holding shall not affect the validity or enforceability of any other part or term hereof.

**(25) VARIATION OF THE CONTRACT:**
No servant or agent of Carrier shall have power to waive or vary any of the terms hereof unless such variation is in writing and is specifically authorized or ratified in writing by Carrier.





**Rose Containerline, Inc.**
259 West 30 th Street, 12th Floor
New York, NY 10001
Tel 212.966.0084 -- Fax 212.966.5141
rosecontainerline@rosecontainerline.com
www.rosecontainerline.com

CONTAINERLINE, INC.

GLOBAL EXPRESS
BOYNTON BEACH, FL

**Statement of Account**
August 10, 2007

| Invoice Date | Due Date | Rose Reference | Paid | Amount | Balance |
|---|---|---|---|---|---|
| 6/21/07 | 7/21/07 | 39900/01 | | 2,678.75 | 2,678.75 |
| 7/6/07 | 8/5/07 | 39823/01 | | 5,250.00 | 7,928.75 |
| 7/16/07 | 8/15/07 | 40168/01 | | 4,095.00 | 12,023.75 |

| | | | Statement Total | 12,023.75 |
|---|---|---|---|---|

| 0 - 30 | 31 - 60 | 61 - 90 | Over 90 days |
|---|---|---|---|
| 4,095.00 | 7,928.75 | 0.00 | 0.00 |

EXHIBIT D



**Rose Containerline, Inc.**
**259 West 30th Street**
**New York, NY 10001**
**Tel +1 212 966 0084**
**Fax +1 212 966 5141**

# Invoice

Invoice Number:  39900/01

Invoice Date:  Jun 21, 2007

Account of:
GLOBAL EXPRESS
BOYNTON BEACH, FL

| **Payment Terms** | **Due Date** |
| --- | --- |
| Net 30 Days | 7/21/07 |

| Description | Amount in US Dollars ($) |
| --- | --- |
| | 2,678.75 |
| Sales Income-Export | |

**TOTAL DUE ROSE CONTAINERLINE**      $   2,678.75



**Rose Containerline, Inc.**
**259 West 30th Street**
**New York, NY 10001**
**Tel +1 212 966 0084**
**Fax +1 212 966 5141**

# Invoice

Invoice Number: 39823/01

Invoice Date: Jul 6, 2007

Account of:
GLOBAL EXPRESS
BOYNTON BEACH, FL

| Payment Terms | Due Date |
|---|---|
| Net 30 Days | 8/5/07 |

| Description | Amount in US Dollars ($) |
|---|---|
| Sales Income-Export | 5,250.00 |

**TOTAL DUE ROSE CONTAINERLINE**     $   5,250.00



**Rose Containerline, Inc.**
**259 West 30th Street**
**New York, NY 10001**
**Tel +1 212 966 0084**
**Fax +1 212 966 5141**

# Invoice

Invoice Number: 40168/01

Invoice Date: Jul 16, 2007

Account of:
    GLOBAL EXPRESS
    BOYNTON BEACH, FL

| **Payment Terms** | **Due Date** |
|---|---|
| Net 30 Days | 8/15/07 |

| Description | Amount in US Dollars ($) |
|---|---|
| Sales Income-Export | 4,095.00 |

**TOTAL DUE ROSE CONTAINERLINE**     $   4,095.00